1  **ENSO LAW, L.L.P.**
   DAVID R. WELCH
2  Nevada State Bar Number 13417
   ALEXANDER R. VAIL
3  Nevada State Bar Number14291
   2970 WEST SAHARA AVE
4  LAS VEGAS, NV 89102
   TELEPHONE: (213) 513-0028
5  EMAIL: litigation@enso.law
   *Attorneys for Plaintiff La Michoacana Plus Ice Cream Parlor Corp.*
6

7              **UNITED STATES DISTRICT COURT**
                  **DISTRICT OF NEVADA**

8  LA MICHOACANA PLUS ICE
   CREAM PARLOR CORP, a                **Case Number:**
9  California Corporation,

10                PLAINTIFF            **COMPLAINT FOR**
                                       **(1) BREACH OF LICENSING**
11                                          **AGREEMENT**
                                       **(2) BREACH OF LICENSING**
12 v.                                       **AGREEMENT**
                                       **(3) INFRINGEMENT OF FEDERALLY**
13                                          **REGISTERED TRADEMARKS AND**
                                            **SERVICE MARKS; 15 U.S.C. § 1114**
14 WINDY CITY PALETAS, INC., a         **(4) LANHAM ACT § 43(a); 15 U.S.C. §**
                                            **1125(a)**
15 California corporation,             **(5) LANHAM ACT § 43(c), 15 U.S.C. §**
   ECUAMEX PALETAS, INC., a                 **1125(c))**
16 California corporation,             **(6) INFRINGEMENT OF FEDERALLY**
   SKY LIMIT ENTERPRISE II, INC.,          **PENDING TRADEMARK**
17 a Nevada corporation,                    **APPLICATIONS AND SERVICE**
   KJAM PALETAS INC., a California          **MARKS; 15 U.S.C. § 1125(a)**
18 corporation,                        **(7) UFAIR COMPETITION UNDER**
   ARTURO MIRANDA, an individual,          **NEVADA DECEPTIVE TRADE**
19 KAYLA RINCON, an individual,            **PRACTICES ACT**
   DIGMEY JARAMILLO, an              **(8) UNFAIR COMPETITION UNDER**
20 individual; and DOES 1 through 50,      **CALIFORIA BUSINESS AND**
   Inclusive,                              **PROFESSIONS CODE § 17200**
21

22                                     **JURY TRIAL DEMANDED**

23                DEFENDANTS
24

25

26

                                    1
                             **COMPLAINT**

Plaintiff La Michoacana Plus Ice Cream Parlor Corp, through its undersigned counsel, hereby brings this action against Windy City Paletas, Inc., ECUAMEX Paletas, Inc., Sky Limit Enterprise II, Inc., KJAM Paletas, Inc., Arturo Miranda, Kayla Rincon, and Digmey Jaramillo (together, "Jaramillo Defendants"). La Michoacana Plus Ice Cream Parlor Corp alleges on information and belief as follows:

### NATURE OF THIS ACTION

1.    This action stems from the intentional infringement of intellectual property belonging to one of the most iconic brands in the fast-developing Mexican paletas market. A paleta is a frozen treat native to Mexico. Unlike ice cream or sorbet, a paleta is made by freezing fresh natural fruit, or cream derived from animals or nuts, or a combination of the two, into a single serving frozen treat served on a stick. It is widely accepted that Paletas were first created in the Mexican state of Michoacán.

2.    Plaintiff, La Michoacana Plus Ice Cream Parlor Corp. (hereinafter "LMP") was founded by Ruben Jimenez. Mr. Jimenez is a third generation paletero. In creating LMP, Mr. Jimenez incorporated over 40 years of recipes, procedures and traditions created and improved by Mr. Jimenez, his father, and grandfather.  Since its inception, LMP has been one of the most popular paletas brands and has grown to over 60 locations throughout the United States of America, Mexico, Guatemala, and the Middle East. Throughout its history, and as exemplified by its global expansion, LMP has developed and maintained a reputation for high quality production and manufacturing of paletas.

3.    In 2020 LMP was approached by a multistate family enterprise comprised of Jaramillo Defendants. The Jaramillo Defendants sought to enter the

**COMPLAINT**

paletas market in California and Nevada, but without experience, recipes, or know-how, they needed a brand to help grow and establish their business.

4.    The Jaramillo Defendants approached LMP to license their trademarks and other intellectual property to open LMP-themed paleta storefronts. Under the terms of the agreement, the Jaramillo Defendant would make full use of LMP's intellectual property to brand paleta and ice cream storefronts. The Jaramillo Defendants would maintain control of each location and determine the best means to operate each location.  In addition to licensing LMP's trademarks and intellectual property, the Jaramillo Defendants would purchase LMP paletas that the Jaramillo Defendants could sell at their storefronts. Further, the Jaramillo Defendants negotiated, in each license agreement, that LMP would not license its intellectual property or sell its paletas to any other companies within a certain geographic designated area, so as to prevent competition with the Jaramillo Defendants' stores. In return, the Jaramillo Defendants agreed to pay LMP royalties for use of their intellectual property as well as timely pay the invoices for all paletas the Jaramillo Defendants stores purchased from LMP.

5.    The Jaramillo Defendants agreed in writing to open two (2) LMP branded paleta locations. However, over the last two years the Jaramillo Defendants impermissibly opened 6 additional stores using LMP trademarks, recipes, and know-hows. Moreover, the Jaramillo Defendants have refused to pay outstanding invoices for LMP manufactured and branded paletas and goods which the Jaramillo Defendants received and sold through each of their storefronts.

6.    The Jaramillo Defendants later sought to correct its infringement by verbally offering to enter into licensing agreements for the use of LMP intellectual property at the infringing locations. However, the Jaramillo Defendant verbal and

written promises rang hallow, and they refused to sign licensing agreements. The proposed license royalties for all locations remain unpaid.

7.    On December 20, 2022, through their attorney, the Jaramillo Defendants, in an attempt to deflect from their impermissible infringing activity in California and Nevada, claimed to have rescinded or in the alternative terminated the licensing agreements between them and LMP for all eight of their locations.

8.    Consistent with the Jaramillo Defendants' previous improper and infringing actions, all eight locations continue to use and profit from use of LMP's intellectual property, including trademarks.

9.    Plaintiff seeks all appropriate equitable and legal relief, including but not limited to preliminary and permanent injunctive relief, monetary recovery, attorneys' fees under the Lanham Act and punitive damages under the state law claims.

10.    As detailed below, Defendants' conduct constitutes fraud, unfair competition, and infringement of LMP's trademark and other intellectual property. This improper conduct is knowing, intentional, and designed to trade on the reputation that LMP has developed through decades of successful promotion and sales of its superior products and goodwill.

11.    Defendants have ignored LMP's requests to cease the unauthorized sale of goods under the Plaintiff's registered trademarks and other intellectual property.

12.    LMP's intellectual property rights have been, and are likely to continue to be, infringed by Defendants' misconduct. As such, LMP will continue to suffer irreparable harm unless and until Defendants are enjoined from using LMP's trademarks and intellectual property in connection with Defendants' products in the United States.

//

4

**COMPLAINT**

**PARTIES**

13.    Plaintiff La Michoacana Plus Ice Cream Parlor Corp or LMP is a California corporation which is a leading specialty paletas company and is expanding worldwide.

14.    Plaintiff is informed and believes Defendant Digmey Jaramillo ("Digmey") is the matriarch of the Jaramillo Defendants and oversees the operation of all the Paleta stores at issue through direct control of the individual and corporate Defendants.  Digmey is a resident of Las Vegas, Nevada and in her individual capacity, acted as an officer of the corporate Defendant Ecuamex Paletas, Inc. and infringed on LMP's trademarks and other intellectual property rights.

15.    Upon information and belief, Defendant Arthuro Miranda ("Miranda"), is the son of Defendant Digmey. Miranda is an individual residing in San Diego, California from where he operates and oversees eight ice cream storefront locations which are infringing on LMP's intellectual property. To this end, Miranda serves as an executive officer of Defendants Windy City Paletas, Inc. ("Windy City") and Sky Limit Enterprises II, Inc. ("Sky Limit").

16.    Plaintiff is informed and believes, and on that basis alleges, that Defendant Kayla Rincon ("Rincon") is an individual residing in Vista, California. Rincon is the sister of Miranda and was at all times material and relevant to this action as an owner, officer, director, and operator of the KJAM Paletas Inc. ("KJAM").

17.    Defendant Windy City Paletas, Inc. or Windy City is a California corporation with its principal place of business in Gardena, California. Windy City is and was at all relevant times an owner of the paletas stores located at 1060 Mission Avenue, Oceanside, California 92054 ("Oceanside" store), 5971 University Avenue, San Diego, California 92115 ("5971 University" store), and 4415 University

**COMPLAINT**

Avenue, San Diego, California 92104 ("4415 University" store) (collectively the "San Diego" stores).

18.  Plaintiff is informed and believes, and on that basis alleges, that Defendant KJAM Paletas Inc. or KJAM is a California corporation with its principal place of business in Vista, California. KJAM is and was at all relevant times an owner of the ice cream store located at 1260 East Vista Way, Vista, California 92084 ("Vista" store).

19.  Plaintiff is informed and believes, and on that basis alleges, that Defendant Ecuamex Paletas, Inc. ("ECUAMEX") is a California corporation with its principal place of business in Escondido, California. ECUAMEX is and was at all relevant times an owner of the ice cream store located at 614 North Escondido Boulevard, Escondido, California ("Escondido" store).

20.  Plaintiff is informed and believes, and on that basis alleges, that Defendant Sky Limit Enterprise II, Inc., or Sky Limit, is a Nevada corporation with its principal place of business in Las Vegas, Nevada. Sky Limit is and was at all relevant times an owner of the following ice cream stores located at:

a.  2338 East Bonanza Road, Las Vegas, Nevada 89101 ("Bonanza" store);

b.  6010 West Cheyenne, Suite 8, Las Vegas, Nevada 89108 ("Cheyenne" store); and

c.  81 North Nellis Boulevard Las Vegas, Nevada 89110 ("Nellis" store). (collectively the "Las Vegas" stores).

21.  LMP is ignorant of the true names and capacities, whether individual, corporate, or otherwise of Defendants named herein as DOES 1 through 50, inclusive, and LMP therefore sues these Defendants by their fictitious names. LMP will amend this complaint to state the true names and capacities of each fictitiously named defendant when ascertained. LMP is informed and believes, and on that basis

alleges, that each of the DOE Defendants is responsible in some manner for the trademark infringement herein alleged.

22.    LMP is informed and believes, and on that basis alleges, that at all times material hereto, Defendants Windy City, ECUAMEX, Sky Limit, KJAM, Miranda, Rincon, Digmey, and DOES 1 through 50, inclusive, were and now are either the agents or principals of each of the other Defendants, and of each other, or were and now are either the owners, interest holders, or co-obligees of the other Defendants, and in such capacity or capacities, participated in the acts and conduct alleged herein, or claim some right, title, or interest in the stores operated by the other Defendants, or are otherwise legally or equitably responsible for the activities at the ice cream stores.

## JURISDICTION AND VENUE

23.  The Court has original jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332 and 1338 and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

24.  This Court has personal jurisdiction over Defendants because: (a) Defendant SKY LIMIT and Digmey are located or reside in the state of Nevada; (b) Defendant Sky Limit infringed on LMP's trademarks and intellectual property in the state of Nevada; Defendants KJAM, ECUAMEX, Windy City, Miranda, Rincon, and Digmey are co-owners, business associates, subsidiaries of Defendant Sky Limit and regularly transact and conduct business within the State of Nevada; and/or (c) Defendants Sky Limit, ECUAMEX, KJAM, Windy City, Miranda, Rincon, and Digmey have otherwise made or established contacts within the State of Nevada sufficient to permit the exercise of personal jurisdiction.

//

//

**COMPLAINT**

25. The District of Nevada is a proper venue pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to LMP's claims occurred in this District.

## STATEMENT OF FACTS

### A. LA MICHOACANA PLUS' INTELLECTUAL PROPERTY

26. LMP owns nine (9) registered United States trademarks, and eight (8) pending United States Trademark Applications, among others, associated with ice cream (paletas), retail stores and ice parlors.

27. LMP is the owner of U.S. Registration Nos. 6,162,614, 6,162,615, 6,162,616, and 6,162,617 for the design mark, filed in International Classes 30, 32, 35, and 43, for goods and services identified as, among others, ice parlors, retail stores, frozen beverages, and ice cream (paletas), as shown in Exhibits 1-4; U.S. Registration No. 6,976,025 for wordmark **MANGONADAS**, filed International Class 30 for goods identified as ice cream drinks, as shown in Exhibit 5; U.S. Registration Nos. 6,399,550 and 6,399,549 for the design mark and wordmark (**EL SABOR DE MEXICO EN CADA MORDIDA**) filed in International Classes 35 and 43 for services identified as retail stores and ice cream parlor, as shown in Exhibits 6-7; and U.S. Registration Nos. 6,571,884 and 6,649,224 for the wordmark **LUCHA FRUTOS**, filed in International Classes 29 and 30 for goods identified as candied fruits, ice cream, chamoy, gummy candies, and candied fruit snacks, as shown in Exhibits 8-9.

28. LMP is also the owner of pending U.S. Trademark Application Serial Nos. 88804228, 88804251, 88804280, and 88804326 for the design mark and wordmark (**LA MICHOACANA PLUS ICE CREAM PARLOR**) filed in International Classes 30, 32, 35, and 43, for goods and services identified as, among others, ice parlors, retail stores, frozen beverages, and ice cream (paletas), as shown

**COMPLAINT**

in Exhibits 10-13, and U.S. Trademark Application Serial Nos. 88804128, 88803386, 88804156 and 88803387 for the design mark and wordmark (**LA MICHOACANA PLUS DISFRUTA LO NATURAL EL AUTENTICO HELADO MEXICANO**) filed in International Classes 30, 32, 35, and 43, for goods and services identified as, among others, ice parlors, retail stores, frozen beverages, and ice cream (paletas), as shown in Exhibits 14-17. (Collectively the "**LMP Trademarks**").

29. LMP, through its predecessors-in-interest and affiliates, has been, and is now, extensively engaged in the business of marketing and selling in interstate commerce, various goods and services including ice creams, candies, candied fruit snacks, flavored waters, frozen fruit beverages, fruit beverages, fruit-based beverages, ice cream soda, smoothies, sorbets in form of beverages, ice cream drinks, chamoy, ice cream parlors, and other related products (hereinafter "**LMP Goods and Services**").[1]

30. LMP's United States trademark registrations were issued prior to the infringement by Defendants, are valid, subsisting, and have continued in full force and effect from their date of registration.

31. LMP first used its trademarks in United States interstate commerce in connection with the LMP Goods at least as early as December 2017.

32. LMP manufactures and sells LMP's goods under LMP Trademarks throughout the United States, Guatemala, and Mexico, including in retail stores in California, Texas, Arizona, Illinois, Indiana, Mississippi, Oregon, Oklahoma, Nevada, Jutiapa, Mexico City and Guadalajara.

---

[1] True and correct copies of documents retrieved from the United States Trademark Office's online Trademark Status & Document Retrieval database ("TSDR") evidencing the current status and LMP's ownership of the LMP Trademarks are attached as Exhibits 1-17.

**COMPLAINT**

33. LMP has distinguished itself as a leader in the competitive industry of paletas, ice cream manufacturing, ice cream parlors, and ice cream retail stores, contributing significantly based on its expertise in the making of paletas which cater to the wide interest and demands of its consumers.

34. Due to LMP's continuous and extensive use of the LMP Trademarks, Plaintiff has built up significant goodwill and know-how therein and its brand has been praised and recognized in numerous articles and social media pages.

35. LMP has invested substantial resources developing, advertising, promoting, and marketing the LMP Goods and Services under the LMP Trademarks throughout the United States and internationally and establishing these goods in the minds of consumers as high-quality goods offered by LMP. As a result, LMP's goods and marks embody a very valuable goodwill.

36. LMP uses the LMP Trademarks directly on packaging for LMP's goods, signs for its retail stores and ice cream parlors and in nationwide advertising and promotional materials for the LMP Goods and Services, including but not limited to, television, print advertisements, brochures, social media, and the Internet.

37. Over the years, LMP has invested substantial resources and time to develop effective and efficient ways to create and market paletas and other goods, as well as standard operating procedures necessary to the operation of a successful ice cream store.

**B. BREACH OF THE LICENSE AGREEMENTS AND KNOWING INFRINGEMENT OF PLAINTIFFS TRADEMARKS AND INTELLECTUAL PROPERTY AND FRAUD**

38. Each Defendant is served in an individual and corporate capacity in the infringement of LMP's intellectual property rights.

39. The Jaramillo Defendants initially approached LMP in early 2020 with the proposal that the Jaramillo Defendants would open two stores in the southern California Cities of Oceanside and Escondido using LMP's registered and/or protected intellectual property. Jaramillo Defendants and LMP drafted and negotiated two separate licensing agreements for the Oceanside and Escondido locations. These agreements were signed and effective on February 6, 2020. The licensing agreement for the city of Oceanside and Escondido stores were entered into between LMP and Windy City. Defendant Digmey signed both written license agreements, on behalf of Windy City.

### i.    Breach of Contract for the Oceanside License Agreement

40. On February 6, 2020, LMP, as Licensor, executed a license agreement (the "License Agreement") with Defendant Windy City for the Oceanside store.

41. At the Oceanside store, the Windy City licensed the right to use LMP Trademarks and intellectual property for the establishment and operation of the store, in exchange for a onetime fee of $35,000 and monthly royalties of five (5) percent of total sales.  The initial term of this License Agreement is five (5) years commencing on the effective date of the agreement. A true copy of the Oceanside store License Agreement is annexed hereto as Exhibit 18.

42. Pursuant to Paragraph 8 of the License Agreement, the Jaramillo Defendants were required to pay LMP a royalty fee for all sales of LMP Goods and Services. Windy City has refused to pay any royalties and also refuses to provide LMP an accurate record of its sales numbers, a breach of the license agreement. Therefore, LMP is unable to calculate the amount of royalties owed to LMP for each month starting July 1, 2021.

43. In addition to the royalty fees not being paid, starting March 25, 2021, the Windy City has not paid the invoice for all the LMP Goods and Services that

were delivered. The open balance on invoices for the Oceanside store is forty-seven thousand eight hundred seventy-seven dollars and eighty-five cents ($47,877.85). Attached hereto as Exhibit 19.

44. Plaintiff has notified the Windy City regarding the balances owed to LMP for both the unpaid royalties and invoices. Windy City has refused to tender payment.

45. Upon information and belief, Windy City continues to sell LMP Goods and Services despite having materially breached the License Agreement, including, but not limited to, failing to pay the invoices and royalties due, failing to submit to LMP the inventory report as required by License Agreement. Consequently, the Jaramillo Defendants have not cured the material breach. LMP seeks to enjoin further sales of LMP Goods or goods containing LMP's intellectual property.

### ii.     Breach of Contract for the Escondido License Agreement

46. On February 6, 2020, LMP, as Licensor, executed a license agreement with Defendant Windy City for the Escondido store, where Windy City licensed from LMP the right to use LMP Trademarks and intellectual property for the establishment and operation of the Escondido store, in exchange for a onetime fee of $35,000 and monthly royalties of five (5) percent of total sales.  The initial term of this License Agreement is five (5) years commencing on the effective date of the agreement. A true copy of the Escondido store License Agreement is annexed hereto as Exhibit 20.

47. Pursuant to Paragraph 8 of the License Agreement, Windy City was and is required to pay LMP a royalty fee for all sales of LMP Goods and Services. Windy City has refused to pay any royalties and also refuses to provide LMP an accurate record of its sales numbers, a breach of the license agreement. Therefore, LMP is

**COMPLAINT**

unable to calculate the amount of royalties owed to LMP for each month starting April 1, 2022.

48. In addition to the royalty fee, starting August 18, 2022, Windy City did not pay the invoice for all the LMP Goods and Services, namely paletas, that were delivered. The open balance on invoices for the Escondido store is twenty-two thousand six hundred ten dollars and forty cents ($22,610.40). Attached hereto as Exhibit 21.

49. It is LMP's information and belief that Windy City transferred operations of the Escondido store to ECUAMEX.

50. Plaintiff has notified ECUAMEX and Windy City regarding the balances owed to LMP for both the unpaid royalties and invoices. ECUAMEX and Windy City have refused to make payment.

51. Upon information and belief, the Escondido location continues to sell LMP Goods and utilize LMP services and know-how despite having materially breached the License Agreement, including, but not limited to, failing to pay invoices and royalties due, and failing to submit to LMP the inventory report as required by the License Agreement. Consequently, the ECUAMEX or Windy City have not cured the material breach, and LMP seeks to enjoin further sales of LMP Goods and Services.

### iii.    Knowing Infringement and Unpaid Invoices

52. Following the establishment of the Oceanside and Escondido stores, the Jaramillo Defendants opened an additional six stores utilizing LMP Trademarks, know-hows and intellectual property and without LMP's written permission.

53. Once LMP uncovered the infringement, the Jaramillo Defendants promised to rectify their infringement at the six additional stores by paying royalties for the previous infringed use, agreeing to pay royalties for the future use, agreeing

to pay invoices for future delivery of paletas and products supplied to the stores, and agreeing to sign a licensing agreement for each of the six additional stores.

54. However, despite numerous promises by the Jaramillo Defendants, the royalty fees for the previous infringement as well as outstanding royalty fees for all six additional locations remain unpaid. Moreover, despite numerous assurances, the Jaramillo Defendants never signed the license agreements for the additional 6 locations they opened without permission.

### a) Vista Store

55. The Vista store opened on January 18, 2021. After impermissibly using LMP trademarks and intellectual property from January 18, 2021, going forward, the Jaramillo Defendants made a partial payment to LMP in the amount of thirty thousand dollars ($30,000.00) for the past infringing use of LMP trademarks and intellectual property.

56. The Jaramillo Defendants failed to make the invoice payments for the goods received from LMP to the Vista store starting as early as February 17, 2021.

57. The open balance on invoices for the Vista store is twenty-four thousand three hundred fifty-two dollars seventy-five cents ($24,352.75). Attached hereto as Exhibit 22.

58. Plaintiff has notified the Jaramillo Defendants regarding the balances owed to LMP for both the unpaid royalties and invoices at the Vista store. The Jaramillo Defendants refuse to tender payment.

59. Upon information and belief, the Jaramillo Defendants are continuing to sell LMP goods and utilize LMP intellectual property and trademarks at the Vista store despite having refused to pay the invoice and the royalty fees.

//

//

### b) 5971 University Store

60. The 5971 University store opened on June 4, 2021. After impermissibly using LMP trademarks and intellectual property from June 4, 2021, going forward, the Jaramillo Defendants made a partial payment of twenty-five thousand dollars ($25,000.00) to LMP for the past infringing use of LMP trademarks and intellectual property for the 5971 University store.

61. The Jaramillo Defendants failed to make the invoice payments for the goods received from LMP to the 5971 University store in the amount of thirty-two thousand five hundred fifteen dollars ($32,515.00). Attached hereto as Exhibit 23 are the invoices.

62. Plaintiff has notified the Jaramillo Defendants regarding the balances owed to LMP for both the unpaid royalties and invoices at the 5971 University store and Jaramillo Defendants refused to make payment.

63. Upon information and belief, the Jaramillo Defendants are continuing to sell LMP intellectual property and trademarks at the 5971 University store despite having refused to pay the invoice and the royalty fees.

### c) 4415 University Store

64. The 4415 UNIVERSITY store opened on March 23, 2022. After impermissibly using LMP trademarks and intellectual property at the 4415 University location, from March 23, 2022, going forward, the Jaramillo Defendants made a partial payment of twenty-five thousand dollars ($25,000.00) to LMP on April 14, 2022, for the past infringing use of LMP trademarks and intellectual property.

65. The Jaramillo Defendants failed to make the invoice payments for the goods received from LMP to the 4415 University store in the amount of thirty-five

thousand one hundred ninety-four dollars ($35,194.00). Attached hereto as Exhibit 24.

66. Plaintiff has notified the Jaramillo Defendants regarding the balances owed to LMP for both the unpaid royalties and invoices at the 4415 University store. Jaramillo Defendants refused to tender payment.

67. Upon information and belief, the Jaramillo Defendants are continuing to sell LMP Goods and Services at the 4415 University store despite having refused to pay the invoice and the royalty fees.

### d) Bonanza Store

68. The Bonanza store opened on November 15, 2021. After impermissibly using LMP trademarks and intellectual property from November 15, 2021, going forward, the Jaramillo Defendants paid twenty-five thousand dollars ($25,000.00) on or around April 15, 2022, to LMP for the past infringing use of LMP trademarks and intellectual property.

69. The Jaramillo Defendants failed to make the invoice payments for the goods received from LMP to the Bonanza store in the amount of fourteen thousand eight hundred sixty-four dollars ($14,864.00). Attached hereto as Exhibit 25.

70. Plaintiff has notified the Jaramillo Defendants regarding the balances owed to LMP for both the unpaid royalties and invoices at the Bonanza store and the Jaramillo Defendants have refused to make payment.

71. Upon information and belief, the Jaramillo Defendants are continuing to sell LMP goods and utilize LMP intellectual property and trademarks at the Bonanza store despite having refused to pay the invoice and the royalty fees.

### e) The Cheyenne Store

72. The Cheyenne store opened on April 15, 2022, and despite impermissibly using LMP trademarks and intellectual property at the Cheyenne

store, the Jaramillo Defendants made no payments for the infringing use of LMP trademarks and intellectual property.

73. The Jaramillo Defendants failed to make the invoice payments for the goods received from LMP to the Cheyenne store in the amount of fifty-three thousand, eight hundred and sixty-two dollars ($53,862.00). Attached hereto as Exhibit 26.

74. Plaintiff has notified the Jaramillo Defendants regarding the balances owed to LMP for both the unpaid royalties and invoices at the Cheyenne store and the Jaramillo Defendants refused to make payment.

75. Upon information and belief, the Jaramillo Defendants are continuing to sell LMP goods and utilize LMP intellectual property and trademarks at the Cheyenne store despite having failed to pay the invoice and the royalty fees.

### f) The Nellis Store

76. The Nellis store opened on August 22, 2022. However, the Jaramillo Defendants never paid royalties for the use of LMP trademarks and intellectual property at the Nellis store.

77. The Jaramillo Defendants failed to make the invoice payments for the goods received from LMP to the Nellis store in the amount of forty-six thousand, three hundred and fifty-eight dollars ($46,358.00). Attached hereto as Exhibit 27.

78. Plaintiff has notified the Jaramillo Defendants regarding the balances owed to LMP for both the unpaid royalties and invoices at the Nellis store and Jaramillo Defendants refused to make payment.

79. Upon information and belief, the Jaramillo Defendants are continuing to sell LMP goods and utilize LMP intellectual property and trademarks at the Nellis store despite having failed to pay the invoice and the royalty fees.

//

**COMPLAINT**

### iv.    The Commission of Fraud to Open 6 Unauthorized Stores

80. The Jaramillo Defendants committed fraud on LMP by entering into license agreements for only two locations in California with the full knowledge that they intended to open a total of 8 locations in Nevada and California.

81. The Jaramillo Defendants entered into agreements with LMP and made initial payments to gain the trust of LMP into believing the Jaramillo Defendants were acting in good faith. In fact, a major component of each agreement was to provide the Jaramillo Defendants with exclusivity over certain geographic regions and LMP's intellectual property, specifically LMP's trademarks, intellectual property and know-how.

82. Through the two initial licensing agreements and subsequent follow-through by LMP, the Jaramillo Defendants gained access to LMP's intellectual property to impermissibly open 6 additional stores which resembled the Oceanside and Escondido stores they opened under the license agreements. In fact, to the customer, it was nearly impossible to distinguish between the stores in which the Jaramillo Defendants signed the license agreements and paid the initial licensing royalties, and the stores which the Jaramillo Defendants did not have license agreements or pay royalties.

83. Jaramillo Defendants' scheme was not evident and conspicuous to LMP at the time it entered into the Oceanside store and Escondido store licensing agreements because LMP was acting in good faith and were assured by the Jaramillo Defendants they were doing the same. Jaramillo Defendants, by their words, agreements, and actions, lead LMP to believe that they would only open 2 stores.

84. However, as the Jaramillo Defendants opened their initial two stores, they surreptitiously planned to open 6 additional stores using LMP's intellectual property, trademarks and know-how. Further the Jaramillo Defendants actively

sought to confuse consumers as to the origin of their products at the 6 additional stores as well as trade on the goodwill of LMP in the ice cream and paletas market.

85. When LMP was made aware that the Jaramillo Defendants intended to expand beyond the scope of the two licensing agreements, using LMP's intellectual property, trademarks, and goodwill, LMP demanded the Jaramillo Defendants stop the use of their intellectual property or compensate LMP for the infringement.

86. Jaramillo Defendants agreed, and over a period of months made payments toward the royalties owed LMP for the past and ongoing infringement.

87. However, soon after, the Jaramillo Defendants stopped making the agreed payments on royalties and invoices but continued to open additional locations.

88. The Nellis Store, which was the last of the unauthorized Jaramillo Defendants' stores to open, began operations on August 22, 2022. Only four months after opening the Nellis store, and in furtherance of their fraud, the Jaramillo Defendants claimed to rescind or terminate all "eight" of the licensing agreements without any attempt to cure or compensate LMP for its losses.

89. The attempt to rescind licensing agreements, which never existed, was just another component to the Jaramillo Defendants' fraud. The Jaramillo Defendants used the "recission" of "eight" licensing agreements as an excuse to continue to use LMP's trademarks, intellectual property, and goodwill without compensating LMP for such use. Further, the Jaramillo Defendants used the "recission" as a means to continue to avoid paying LMP its outstanding royalties and invoices.

## FIRST CLAIM FOR RELIEF

**(Breach of Written Trademark Licensing Agreement Against Defendant Windy City for Oceanside Store)**

90. Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

91. LMP has long been in the business of manufacturing ice creams (paletas), advertising, marketing, offering for sale, selling, and licensing to third parties to sell under LMP Trademark, numerous categories of products in the United States, Mexico, the Middle East and Guatemala, including the LMP Goods and Services as well as other products.

92. On February 6, 2020, LMP and Windy City entered into a valid and binding License Agreement for the use of LMP's trademarks, know-how and intellectual property to establish and operate an LMP-themed ice cream store in the city of Oceanside, California.

93. LMP provided Windy City all of its intellectual property, including trademarks and know-how, pursuant to the Licensing Agreement and fulfilled all of its obligations under the licensing agreement.

94. The Defendant Windy City has all failed to meet its obligations under the agreements including but not limited to: paying LMP the royalties fees, failing to pay invoices for goods received from LMP, failing to comply with the reporting requirements, as well as usurping the intention of the agreement by infringing on LMP's trademarks.

95. The Windy City's breach frustrated the purpose of the agreement and strikes at the core purpose of the agreement and therefore is a material breach of the licensing agreement.

96. The Windy City is obligated to pay LMP the balance of the royalties set forth in the Oceanside store License Agreement, namely five (5) percent of their gross sales, royalties for all continuing use of LMP intellectual property as well as for outstanding invoices.

97. By virtue of the Licensee's breach of its obligations pursuant to the agreement, the Plaintiff has sustained damages in a sum to be determined at trial but believed to exceed $300,000.

## SECOND CLAIM FOR RELIEF

### (Breach of Written Trademark Licensing Agreement Against Defendant Windy City for Escondido Store)

98. Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

99. LMP has long been in the business of manufacturing ice creams (paletas), advertising, marketing, offering for sale, selling, and licensing to third parties to sell under LMP Trademark, numerous categories of products in the United States, Mexico, the Middle East and Guatemala, including the LMP Goods and Services as well as other products.

100.    On February 6, 2020, LMP and Windy City entered into a valid and binding License Agreement for the use of LMP's trademarks, know-how and intellectual property to establish and operate an LMP-themed ice cream store in the city of Escondido, California.

101.    LMP provided Windy City with all of its intellectual property, including trademarks and know-how, pursuant to the Licensing Agreement and fulfilled all of its obligations under the licensing agreement.

102.    The Defendant Windy City has all failed to meet its obligations under the agreements including but not limited to: paying LMP the royalties fees; failing to pay invoices for goods received from LMP; failing to comply with the reporting requirements; as well as usurping the intention of the agreement by infringing on LMP's trademarks.

103.    The Windy City's breach frustrated the purpose of the agreement and strikes at the core purpose of the agreement and therefore is a material breach of the licensing agreement.

104.    The Windy City is obligated to pay LMP the balance of the royalties set forth in the Escondido store License Agreement, namely five (5) percent of their gross sales, royalties for all continuing use of LMP intellectual property as well as for outstanding invoices.

105.    By virtue of the Licensee's breach of its obligations pursuant to the agreement, the Plaintiff has sustained damages in a sum to be determined at trial but believed to exceed $300,000.

### THIRD CLAIM FOR RELIEF

**(Infringement of Federally Registered Trademarks and Service Marks; 15 U.S.C. § 1114 against All Defendants)**

106.    LMP repeats and incorporates by reference the allegations in the preceding paragraphs.

107.    LMP owns the LMP Trademarks, and these registrations are in full force and effect and are enforceable.

108.    LMP has long been in the business of manufacturing ice creams (paletas), advertising, marketing, offering for sale, selling, and licensing to third parties to sell under LMP Trademark, numerous categories of products in the United States, Mexico, and Guatemala, including the LMP Goods and Services as well as other products.

109.    The goods invariably contain LMP Trademarks which are exclusively owned by LMP.

110.    The Jaramillo Defendants' unauthorized use and promotion of the LMP's trademarks have or will cause confusion, mistake, or deception as to the

affiliation, connection, or association of LMP with the Jaramillo Defendants, or with regard to the origin, sponsorship or approval by LMP of Jaramillo Defendants' goods, services, or commercial activities.

111.    At all times relevant, the Jaramillo Defendants exercised ownership or control over LMP's goods and knowingly cooperated in and/or induced encouraged, enabled, or aided the infringement of Plaintiff's LMP Trademarks and rights by selling LMP Goods and Services.

112.    The foregoing acts of the Jaramillo Defendants constitute false designation of association, affiliation, connection, endorsement and/or approval under 15 U.S.C. § 1 125(a), and/or vicarious or contributory infringement of LMP's rights under 15 U.S.C. § 1125(a).

113.    The Jaramillo Defendants' actions also constitute the use in interstate commerce of a reproduction, or copy, of LMP's registered trademark in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion or mistake, or to deceive, in violation of 15 U.S.C. § 1114.

114.    Upon information and belief, the Jaramillo Defendants have engaged in such false designation of origin, association, affiliation, connection, endorsement and/or approval knowingly, willfully, deliberately, and in conscious disregard of LMP's rights, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

115.    LMP has been damaged and will continue to be damaged, and Jaramillo Defendants have been unjustly enriched, by such unlawful conduct in amounts to be proven at trial.

116.    In addition, the Jaramillo Defendants' conduct described herein has caused and, if not enjoined, will continue to cause irreparable damage to LMP's

rights in its marks, and to the business, positive reputation, and goodwill of LMP, which cannot be adequately compensated solely by monetary damages. LMP therefore has no adequate remedy at law and seeks permanent injunctive relief pursuant to 15 U.S.C. § 1116.

## FOURTH CLAIM FOR RELIEF

### (False Designation of Origin, False Description, and Unfair Competition Lanham Act § 43(a), 15 U.S.C. § 1125(a) against All Defendants)

117.    Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

118.    The Jaramillo Defendants are continuing to offer, sell, advertise and promote LMP Goods and Services, utilize LMP Trademarks without LMP's permission, consent or authorization, and the Jaramillo Defendants are representing and making it appear that they are authorized to sell LMP Goods and Services.

119.    The Jaramillo Defendants aforesaid conduct constitutes a false designation of origin, and/or a false and misleading description or representation of goods in commerce, with knowledge of its falsity, which is likely to cause confusion, mistake, and deception, and misrepresents the origin of defendants' goods, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

120.    Among other things, the Jaramillo Defendants' unauthorized sale of the LMP Goods and Services and use of the LMP's Trademarks, tend to mislead, deceive and confuse, and will have the result of misleading, deceiving and confusing the public to believe that Jaramillo Defendants and/or their infringing goods are affiliated with, sponsored or controlled by LMP. Therefore, the Jaramillo Defendants have traded, and are trading, upon, and gained public acceptance and other benefits from, LMP's favorable reputation, which has accordingly been placed at risk by the Jaramillo Defendants' illegal acts and conduct.

121.    LMP has been irreparably damaged and unless the Jaramillo Defendants are restrained and enjoined will continue to be irreparably damaged by the Jaramillo Defendants' aforesaid actions.

122.    LMP has no adequate remedy as law for Jaramillo Defendants' continuing wrongful actions.

123.    The Jaramillo Defendants have at all times been aware of LMP Trademarks and of their lack of authority to use LMP Trademarks and to sell any of the LMP Goods and Services. Accordingly, the infringing, fraudulent, and tortious acts of the Jaramillo Defendants are intentional, willful, and deliberate.

## FIFTH CLAIM FOR RELIEF

### (Trademark Dilution Lanham Act § 43(c), 15 U.S.C. § 1125(c) against All Defendants)

124.    Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

125.    The foregoing acts of the Jaramillo Defendants constitute tarnishment and dilution of the LMP Trademarks, in violation of § 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

126.    The Jaramillo Defendants' dilution of LMP Trademarks has been reckless, fraudulent and/or willful.

127.    Plaintiff has no adequate remedy at law, and the wrongful acts of the Jaramillo Defendants are intentional, willful, and deliberate.

## SIXTH CLAIM FOR RELIEF

### (Infringement of Federally Pending Trademark Applications;15 U.S.C. § 1125(a); against All Defendants)

128.    Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

129.     Plaintiff owns the LMP trademarks that are pending registration, which are in full force and effect and are enforceable.

130.     LMP has long been in the business of manufacturing ice creams (paletas), advertising, marketing, offering for sale, selling, and licensing to third parties to sell under LMP's trademarks, numerous categories of products in the United States, Mexico, and Guatemala, including the LMP Goods and Services as well as other products.

131.     The goods invariably contain LMP's trademarks which are exclusively owned by LMP.

132.     At all times relevant, the Jaramillo Defendants exercised ownership or control over LMP's goods and knowingly cooperated in and/or induced encouraged, enabled or aided the infringement of Plaintiff's trademarks and rights by selling LMP Goods and Services.

133.     The Jaramillo Defendants' unauthorized use and promotion of LMP's trademarks will likely cause confusion, mistake, or deception as to the affiliation, connection, or association of Plaintiff with Defendants, or with regard to the origin, sponsorship or approval by Plaintiff of Defendants' goods, services, or commercial activities.

134.     The foregoing acts of the Jaramillo Defendants constitute false designation of association, affiliation, connection, endorsement and/or approval under 15 U.S.C. § 1125(a), and/or vicarious or contributory infringement of LMP's rights under 15 U.S.C. § 1125(a).

135.     The Jaramillo Defendants' actions also constitute the use in interstate commerce of a reproduction, or copy, of LMP's trademark in connection with the sale, offering for sale, distribution, or advertising of goods or services on or

in connection with which such use is likely to cause confusion or mistake, or to deceive.

136.     Upon information and belief, the Jaramillo Defendants have engaged in such false designation of origin, association, affiliation, connection, endorsement and/or approval knowingly, willfully, deliberately, and in conscious disregard of LMP's rights.

137.     LMP has been damaged and will continue to be damaged, and Defendants have been unjustly enriched, by such unlawful conduct in an amount to be proven at trial.

138.     In addition, the Jaramillo Defendants' conduct described herein has caused and, if not enjoined, will continue to cause irreparable damage to LMP's rights in its marks, and to the business, positive reputation and goodwill of LMP, which cannot be adequately compensated solely by monetary damages. LMP therefore has no adequate remedy at law and seeks permanent injunctive relief pursuant to 15 U.S.C. § 1116.

## SEVENTH CLAIM FOR RELIEF

### (Fraud Under California Law against All Defendants)

139.     Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

140.     The Jaramillo Defendants collectively, between and among themselves, conspired to commit fraud by convincing LMP's to provide them with LMP's intellectual property, trademarks, and goodwill.

141.     The Jaramillo Defendants agreed to sign two licensing agreements with LMP in order obtain LMP's intellectual property, trademarks, and know-how under the auspices to using the same in only two stores.

//

142.    Instead, the Jaramillo Defendants surreptitiously opened 6 additional stores using LMP's intellectual property, trademarks, and know-how, and capitalizing on LMP's goodwill.

143.    LMP was unaware of the Jaramillo Defendants' fraudulent plan and agreed to provide Jaramillo Defendants its intellectual property under the licensing agreements. LMP reasonably relied on Jaramillo Defendants' statements that its intellectual property would only be used at the two locations listed in the License Agreements.

144.    As a result, Plaintiff suffered harm to LMP Trademarks, the actions of the Jaramillo Defendants which are likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Plaintiff with the Jaramillo Defendants, or with regard to the origin, sponsorship or approval by Plaintiff of the Jaramillo Defendants' goods, services, or commercial activities.

145.    Plaintiff has also suffered from a loss in revenue, royalties and goodwill as a result of Jaramillo Defendants' fraud.

## EIGHTH CLAIM FOR RELIEF

### (Unfair Competition Under Nevada Deceptive Trade Practices Act ("NDTPA") against Defendant Sky Limit, Digmey and Miranda)

146.    Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

147.    Defendant Sky Limit is the owner of the Las Vegas stores (Bonanza, Cheyenne, and Nellis stores). Defendants Miranda and Digmey oversee, control and operate Sky Limit and its three Las Vegas stores.

148.    Defendants have deliberately and willfully attempted to trade on LMP's long-standing and hard-earned goodwill in its name and marks and the reputation LMP established in connection with its products and services, as well as

to confuse consumers as to the origin and sponsorship of Defendants' goods and to pass their products and services off as those of LMP.

149.    Defendants' unauthorized and tortious conduct has also deprived and will continue to deprive LMP of the ability to control consumer perception of its products and services offered under LMP's trademarks, placing the valuable reputation and goodwill of LMP in the hands of Defendants.

150.    Defendants' conduct is likely to cause confusion, mistake, or deception as to the affiliation, connection or association of Defendants use of LMP's trademarks, know-how and intellectual property, and as to the origin, sponsorship or approval of Defendants and their products and services, in violation of the NDTPA.

151.    As a result of Defendants' aforesaid conduct, LMP has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by LMP in its marks. This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which LMP has no adequate remedy at law. LMP will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

## NINTH CLAIM FOR RELIEF

**(Unfair Competition under Cal. Bus. & Prof. Code § 17200 against Defendant Windy City, KJAM, ECUAMEX, Rincon, Miranda and Digmey)**

152.    Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

153.    Through its unauthorized use of the LMP's trademarks, know-how and intellectual property, and continuous engagement in a willful and concerted effort to trade on LMP's goodwill by use of LMP's trademarks and know-how, Defendants Windy City, KJAM, ECUAMEX, Rincon, Miranda and Digmey have

engaged in an unlawful and unfair business acts or practices in violation of Cal. Bus. & Prof. Code §17200.

154.    Jaramillo Defendants are aware of LMP's rights to its intellectual property but willfully and intentional circumvented LMP's rights to use of its trademarks to confuse the California consumer as to the quality and origin of its goods and services. Defendants' acts constitute willful and intentional violation of Cal. Bus. & Prof. Code §17200.

155.    Jaramillo Defendants' willful and intentional violation of Cal. Bus. & Prof. Code §17200 has caused and is causing great and irreparable injury and damage to Plaintiff's business and its goodwill and reputation in an amount that cannot be ascertained at this time.

156.    Unless the Jaramillo Defendants are preliminary and permanently restrained, will cause further irreparable injury and damages, leaving LMP with no adequate remedy at law.

157.    By reason of the foregoing, LMP is entitled to injunctive relief against Defendants, and anyone acting in concert with the Defendants, to restrain further violation of Cal. Bus. & Prof. Code § 17200.

## **PRAYER FOR RELIEF**

1.    For a preliminary and permanent injunction prohibiting Jaramillo Defendants from using the mark or any other mark that is confusingly similar to Plaintiff's mark.

2.    For monetary relief, including actual damages under the Lanham Act; Defendants' profits under the Lanham Act 15 U.S.C. § 1117; treble damages under Treble Damages Act § 35; discouragement of profits; punitive damages and any and all other damages according to proof at trial.

//

**COMPLAINT**

3.     Attorneys' fees and expenses incurred in prosecuting this action, in a sum to be determined by this Court and be awarded to Plaintiff under the Lanham Act or as otherwise provided by contract and by law.

4.     That Jaramillo Defendants be ordered to pay to Plaintiff pre-judgment and post-judgment interest on all sums allowed by law.

5.     The Jaramillo Defendants be ordered to pay to Plaintiff all accrued licensing royalties and invoices that Defendants used to profit from Plaintiff's goodwill and use of intellectual property.

6.     That Jaramillo Defendants be ordered to pay to Plaintiff the costs incurred in this action.

7.     Plaintiff is entitled to recover from the Jaramillo Defendants jointly and severally.

8.     That Plaintiff has such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury as to all issues so triable.


Date: February 21, 2023                    Respectfully submitted,

                                                     ENSO LAW L.L.P.


                                                     By: _____
                                                          David R. Welch

**COMPLAINT**