# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| La Michoacana Plus Ice Cream Parlor Corp., | Case No. 2:23-cv-00279-CDS-DJA |
| Plaintiff | **Order Granting Motion to Transfer, Denying Defendants' Motion to Dismiss Without Prejudice, and Closing Case** |
| v. | |
| Windy City Paletas, Inc., et al., | [ECF Nos. 10, 11] |
| Defendants | |

This is an intellectual property (IP) infringement action. Defendants Windy City Paletas, Inc., Ecuamex Paletas, Inc., Sky Limit Enterprise II, Inc., Arthuro Miranda, Kayla Rincon, and Digmey Jaramillo (collectively, "defendants"), move to transfer this case to the United States District Court for the Southern District of California. ECF No. 10.[1] Plaintiff La Michoacana opposes the motion. ECF No. 14. For the reasons herein, I grant defendants' motion to transfer this case to the Southern District of California. Because this case will be transferred, I deny defendants' motion to dismiss (ECF No. 11) without prejudice.

## I.    Background

La Michoacana is a vendor of paletas, a frozen desert made by freezing fresh natural fruit or cream derived from animals or nuts, or a combination of both, into a single serving frozen treat served on a stick. First Am. Compl. (FAC), ECF No. 6 at ¶¶ 1–2. La Michoacana alleges that defendant Jaramillo approached it to license La Michoacana's trademarks and other IP so Jaramillo could open two La Michoacana paleta storefronts. *Id.* at ¶¶ 3–4. Jaramillo agreed in writing with La Michoacana to open two paleta stores (*id.* at ¶ 5), but failed to comply with the agreement by opening six additional stores. *Id.* at ¶¶ 5–6. La Michoacana also alleges that Jaramillo attempted to correct its infringement by "verbally offering to enter into licensing

---

[1] Because I grant the motion to transfer, I do not resolve defendants' pending motion to dismiss. ECF No. 11.

agreements for the use of [La Michoacana] intellectual property" but both verbal and written agreements "rang hollow" because Jaramillo refused to sign the licensing agreements. *Id.* at ¶ 6.

Jaramillo still operates all eight stores: five are in California and three are in Nevada. *Id.* at ¶¶ 7–8. And the proposed license royalties for all locations remain unpaid. *Id.* at ¶ 6. La Michoacana contends that defendants obtained its IP under false pretenses, alleging that defendants Rincon, Jaramillo and Miranda caused La Michoacana's IP, which was originally licensed to defendant Windy City, to be impermissibly distributed to defendants Ecuamex Paletas, Inc. KJAM, Inc. *See generally id.*

La Michoacana brings the following claims against all defendants: (1) infringement of federally registered trademarks and service marks; (2) false designation of origin, false description, and unfair competition in violation of the Lanham Act; (3) trademark dilution in violation of the Lanham Act; (4) infringement of federally pending trademark applications and service marks; (5) fraud under California law; and the following claims against individual defendants: (6) unfair competition under Nevada Deceptive Trade Practices Act against Sky Limit, Digmey, and Miranda; and (7) unfair competition under California Business and Professions Code against Windy City, KJAM, Ecuamex, Rincon, Miranda, and Jaramillo. *See generally id.*

Defendants Windy City Paletas, Inc., Ecuamex Paletas, Inc., Sky Limit Enterprise II, Inc., Miranda, Rincon, and Jaramillo filed a motion to transfer this case to the United States District Court for the Southern District of California, or in the alternative to dismiss for lack of personal jurisdiction. ECF Nos. 10; 11. La Michoacana opposes both motions. ECF No. 14.

## II.   Legal Standard

District courts have the discretion to "adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citation omitted). Motions to transfer are governed by 28 U.S.C. § 1404(a), which states: "[f]or the convenience of parties and witnesses, in the interest of

justice, a district court may transfer any civil action to any other district or division where it might have been brought." Under a § 1404(a) motion to transfer, the plaintiff's choice of forum is "entitled to 'paramount consideration' and the moving party must show that a balancing of interests weighs heavily in favor of transfer." *Galli v. Travelhost, Inc.*, 603 F. Supp. 1260, 1262 (D. Nev. 1985). Hence, "§ 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack*, 376 U.S. 612, 645–46 (1964). The movant must make a strong showing that transfer is appropriate. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2nd 834, 843 (9th Cir. 1986); *Galli*, 603 F. Supp. at 1262.

In determining whether to grant a motion to transfer, the court conducts a two-part analysis. *Malcolm v. Acrylic Tank Mfg. Inc.*, 2019 WL 1923633, at *2 (D. Nev. Apr. 30, 2019) (citing 28 U.S.C. § 1404(a)). First, the court must determine if the action could have been brought in the court to which the transfer is sought, and second, determine whether transfer is in the convenience of the parties and witnesses, and in the interest of justice. *Id.*

**III.    Discussion**

For the reasons discussed below, I find that defendants satisfied their burden of proving that this action could have been brought in the Southern District of California and that transfer is appropriate for the convenience of the parties and witnesses and is in the interest of justice.

**A.   This action could have been brought in the Southern District of California.**

A suit "might have been brought" in a district where the "plaintiff has a right to sue . . . independently of the wishes of the defendant." *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960) (quotation omitted). An action can be commenced in a court that has subject matter jurisdiction, personal jurisdiction, and proper venue. *Id.*

Subject matter jurisdiction exists where either: (1) a federal question arises on the face of the complaint or (2) if there is diversity jurisdiction. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Here, the complaint pleads four claims arising under federal law. *See generally* FAC, ECF

No. 6. Thus, the Southern District of California has subject matter jurisdiction over this action. *See* 28 U.S.C. § 1331.

"Personal jurisdiction must exist for each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (citing *Data Disc., Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1289 n.8 (9th Cir. 1977)). Personal jurisdiction can be either "general" or "specific." *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984). "Aside from either general or specific jurisdiction, 'consent jurisdiction is an independent basis for jurisdiction.'" *First Nat'l Bank v. Estate of Carlson*, 448 F. Supp. 3d 1091, 1105 (D. Mont. 2020). The parties agree that all parties, except Sky Limit, reside or are domiciled in California and are subject to personal jurisdiction in the Southern District of California. ECF No. 10 at 6–7; ECF No. 14 at 11. Sky Limit's sole shareholder, officer, and director, defendant Miranda, lives in California and consents to personal jurisdiction in California. *See* ECF No. 10 at 7; *see also* Miranda Decl. Defs.' Ex. 2, ECF No. 10-2. Thus, the Southern District of California has personal jurisdiction over defendants. *See* 28 U.S.C. § 1331.

In cases such as this one, which are based in federal question jurisdiction, venue is proper in a judicial district where any defendant resides if all defendants reside in the same state. 28 U.S.C. § 1391(b)(1). For venue purposes, a corporate defendant resides in any district in which it is subject to personal jurisdiction. 28 U.S.C. § 1391(c). Because all individual defendants reside in California and all corporate defendants are subject to personal jurisdiction in California, venue would be proper in the Southern District of California.

### B.   The *Jones* factors favor transfer.

In determining whether the transferee district would promote the convenience of parties and witnesses, and serve the interests of justice, district courts in the Ninth Circuit consider the *Jones* factors: (1) the location where the relevant agreements were negotiated and executed, (2) the plaintiffs' choice of forum, (3) the parties' contacts with the forum, (4) the contacts relating to the plaintiffs' cause of action in the chosen forum, (5) the state most familiar with the

governing law, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. *Jones*, 211 F.3d at 498–99. Courts may also consider (9) whether public policy favors transfer. *Id.* at 499.

La Michoacana did not address the *Jones* factors in its response but instead addressed different factors, some of which are similar to *Jones*. *See generally* ECF No. 14.[2] Nonetheless, I employ the *Jones* analysis here, and I will address La Michoacana's response where applicable.

### 1. *Location where the relevant agreements were negotiated and executed.*

Defendants state that no licensing agreement was negotiated or executed in Nevada, but rather was negotiated or executed in either California or Illinois. ECF No. 10 at 7. Without citing precedent, La Michoacana argues that "this component of Defendants['] argument is a red herring" because the licensing agreements "are not at issue in this litigation." ECF No. 14 at 12. But La Michoacana not only discusses licensing agreements in the FAC, but also attaches two licensing agreements to the FAC. *See* FAC, ECF No. 6 at ¶¶ 40–53. Defendants only proffered evidence that the licensing agreements between La Michoacana and Windy City were signed in Illinois. *See* Miranda Decl. Defs.' Ex. 2, ECF No. 10-2 at ¶ 4. With only evidence that one licensing agreement was executed in Illinois, and no evidence that any licensing agreement was signed in Nevada or California, this factor is neutral.

### 2. *The plaintiff's choice of forum, the parties' contacts with the forum, and contacts relating to the plaintiff's cause of action in the chosen forum.*

The plaintiff's choice of forum is the District of Nevada (ECF No. 14 at 10), and its choice of forum is ordinarily given substantial weight. *Decker Coal Co.*, 805 F.2d at 842. Here, La Michoacana's principal place of business is California, not Nevada. *See* Compl., ECF No. 1 at ¶ 13.

---

[2] La Michoacana cites a 2007 case from the District of California. *See* ECF No. 14 at 7. But since the Ninth Circuit issued the *Jones* order in 2000, courts in the circuit have regularly employed the *Jones* factors in determining whether to transfer venue.

Given Section 1404's principle of convenience, this factor is less significant in this case because La Michoacana's choice of forum is not in the state in which it is located. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981); *see also Smith v. Kennedy*, 2022 WL 1205207, at *1 (D. Nev. Apr. 21, 2022) ("plaintiff is entitled to less deference in his choice of forum if he does not reside in that forum."). Thus, this factor is given less deference.

Further, the parties have limited contacts with Nevada, and extensive contacts with California, particularly with San Diego. In addition to La Michoacana's headquarters being located in California, it has no Nevada offices or employees. *See* Miranda Decl. Defs.' Ex. 2, ECF No. 10-2 at ¶ 5. The individual defendants all reside in San Diego County, California. FAC, ECF No. 6 at ¶¶ 14–16. Windy City is headquartered in California and operates three ice cream stores in San Diego. *Id.* at ¶ 17; Miranda Decl., Defs.' Ex. 2, ECF No. 10-2 at ¶ 3. KJAM and Ecuamex are California corporations with their principal place of business located in San Diego County, California. FAC, ECF No. 6 at ¶¶ 18–19. The only defendant domiciled in Nevada is Sky Limit but its sole shareholder resides in California. *Id.* at ¶ 20; Miranda Decl. Defs.' Ex. 2, ECF No. 10-2 at ¶¶ 2, 6. Therefore, in considering the parties' ties to California, La Michoacana's forum selection is given less weight, so this factor favors transfer.

### 3. *The state most familiar with the governing law.*

Four of La Michoacana's claims are under federal law, two are under California law, and one is under Nevada law. *See generally* FAC, ECF No. 6. Because there is only one claim under Nevada law, this factor also weighs in favor of transfer.

### 4. *The differences in the costs of litigation in the two forums and convenience to the parties.*

La Michoacana is a California corporation (FAC, ECF No. 6 at ¶ 13), and is headquartered in Porterville, California. Miranda Decl. Defs.' Ex. 2, ECF No. 10-2 at ¶ 5. Defendants argue that the fact that San Diego is only 280 miles away from Porterville, whereas Las Vegas is 336 miles away from Porterville, further supports transferring this action. ECF No.

10 at 9–10. All the individual defendants and shareholders, officers, and directors of corporate defendants reside in the Southern District of California. *See* Miranda Decl. Defs.' Ex. 2, ECF No. 10-2 ¶¶ 2–3, 6; Jaramillo Decl., Defs.' Ex. 1, ECF No. 10-1 at ¶¶ 2–3; Rincon Decl., Defs.' Ex. 3, ECF No. 10-3 ¶¶ 2–3. Moreover, five of the eight stores in question are in California, whereas only three are located in Nevada. If employees or customers from these stores are deposed, the majority of them would reside in California. It would therefore be less expensive—and more convenient—for the parties if this case is heard in California. Accordingly, I find this factor favors transfer.

> ### 5.  *The availability of compulsory process to compel attendance of unwilling non-party witnesses.*

Federal courts can compel a witness to testify "within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense." *Dooley v. Nevada Gold Mines, LLC*, 2022 WL 867265, at *3 (D. Nev. Mar. 23, 2022) (quoting Fed. R. Civ. P. 45(c)(1)(B)). The parties have not yet determined whether there are any unwilling non-party witnesses. ECF No. 10 at 10. Nonetheless, because it appears that the majority of the parties' directors, employees, or former employees reside in California, this court may not be able to compel them to testify. Accordingly, this factor also weighs in favor of transfer.

> ### 6.  *The ease of access to sources of proof.*

Defendants state that "[b]ecause Plaintiff and all Defendants except Sky Limit reside in California, and because Sky Limit's sole shareholder resides in California, all of the key witnesses are located in California." ECF No. 10 at 10. They further argue that "almost all of the documents and tangible things maintained by the parties that are relevant to the FAC are located either in San Diego County (for Defendants) or in Porterville, California (for Plaintiff)." *Id*. And, "[t]o the degree a site inspection of any of the Stores is required, since five of the eight Stores are located in San Diego, it would be more convenient if this case were litigated in the

Southern District of California." *Id.* at 11. La Michoacana argues that most, if not all the evidence in this case is electronically available so the "documents and depositions of the parties [can be] expeditiously arranged in Nevada." ECF No. 14 at 11–12. While not a *Jones* factor, La Michoacana argues "all other practical problems that make trial of a case easy," maintaining this action in Nevada will likely be less costly than in San Diego. *Id.* at 12. Considering the arguments of the parties, the ease of access to sources of proof leans towards California. Thus, this factor slightly[3] weighs in favor of transfer.

### 7.   *Whether public policy favors transfer.*

The two licensing agreements that La Michoacana attached to the FAC as exhibits are titled "Unitary License Agreement for California" and are between La Michoacana and California corporations. *See* Oceanside Store License Agreement, Pl.'s Ex. 18, ECF No. 6-18; *see also* Escondido Store License Agreement, Pl.'s Ex. 20, ECF No. 6-20. These license agreements constitute franchises under California law. *See* Cal. Corp. Code § 31005(a) ("'Franchise' means a contract or agreement, either expressed or implied, whether oral or written . . . ."). California "has a strong public policy in providing a protective local forum for local franchisees." *Elite Sports Enters. v. Lococo*, 2008 U.S. Dist. LEXIS 67472, at *16 (D.N.J. Sept. 5, 2008) (citing *Jones*, 211 F.3d at 499) (affirming district court's denial of motion to transfer venue under Section 1404(a) and noting California's strong public policy of providing protective local forum for local franchisees). Thus, public policy strongly favors transfer to the Southern District of California.

Accordingly, because this action could have been brought in the Southern District of California, and because the convenience of the witnesses and the parties favors transfer, the court finds that in balancing all the *Jones* factors, defendants have met their burden of showing that transfer to the Southern District of California is appropriate.

---

[3] It only weighs slightly because of modern-day ability of digital sharing.

IV.     Conclusion

         IT IS THEREFORE ORDERED that defendants' **motion to transfer [ECF No. 10] is GRANTED.**

         IT IS FURTHER ORDERED that defendants' motion to dismiss **[ECF No. 11] is denied without prejudice** to move again before the transferee court.

         The Clerk of Court is kindly instructed to **TRANSFER** this case to the United States District Court for the Southern District of California and **close the case in this district**.

         Dated: March 31, 2024

                                                        _____
                                                        Cristina D. Silva
                                                        United States District Judge